Lina Kaisey (SBN 314322)
*lina@kaiseylaw.com*
  **KAISEY LAW PC**
100 Wilshire Blvd. Suite 700
Santa Monica, CA 90403
Tel.:  (858) 774-0819

Blake Hunter Yagman (N.Y. Bar No. 5644166)*
*blake.yagman@yagmanpllc.com*
  **YAGMAN PLLC**
626 RexCorp Plaza, Suite 605
Uniondale, New York 11556
Tel.:  (929) 709-1493

*\*PHV Forthcoming*

*Attorneys for Plaintiff Granados*
*and the Putative Classes*

**[ADDITIONAL COUNSEL ON SIGNATURE PAGE]**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| KAIT GELBSPAN and VICTOR GRANADOS, *on behalf of themselves and all others similarly situated*,<br><br>　　　　　*Plaintiffs*,<br><br>　　v.<br><br>TAYLOR FRESH FOODS, INC.<br><br>　　　　　*Defendant*. | **Case No.**<br>_____<br>(1) Negligence;<br>(2) Negligent Misrepresentation;<br>(3) Breach of Implied Warranty of Merchantability;<br>(4) Violations of California's Unfair Competition Law;<br>(5) Violations of New York's General Business Law 349; and<br>(6) Unjust Enrichment (in the alternative) |

Plaintiffs KAIT GELBSPAN and VICTOR GRANADOS ("Plaintiffs"), on behalf of themselves all others similarly situated, bring this Class Action Complaint (the "Action") against Defendant TAYLOR FRESH FOODS, INC. ("Taylor Farms" or the "Company"), and allege the following upon personal knowledge as to Plaintiffs' own acts and experiences, and upon information and belief — including the investigation of counsel and public empirical reports — seeking all forms of available relief including damages, injunctive relief, and a declaratory judgment as follows:

## NATURE OF THE ACTION

1. Taylor Farms is nationwide producer, manufacturer, and distributor of vegetables, including shredded lettuce and leafy greens, to both grocery stores and restaurants.

2. This is a class action on behalf of all consumers nationwide who bought Defendant's lettuce, shredded lettuce and leafy greens products during the June and July of 2026 outbreak of food poisoning due to contamination (the "Products").

3. The Products were and are unfit for distribution and/or consumption because they had become contaminated with a microscopic parasite called *Cyclospora caytanensis* ("Cyclosporiasis"). Cyclosporiasis can cause explosive diarrhea, loss of appetite and weight loss, stomach cramps and bloating, nausea and vomiting, fatigue and muscle aches, and low-grade fever. The parasite spreads through consuming food or drinking water which are contaminated with feces. At the time of filing, the Cyclosporiasis in the United States has caused thousands of Americans to become extremely ill with a significant amount of those who showed symptoms to need hospitalization.

4. Defendant manufactures, warrants, advertises, markets, distributes, and sells the Products under several brand names, including brands sold by Costco and Whole Foods as well as in restaurants including Sweetgreen and Taco Bell. Defendant marketed and advertised the Products as being fit for human consumption, represented that the Products provide nutrition and/or guaranteed that the Products were nutritious. In reality, Defendant's advertising and marketing is deceptive, false, and misleading because the

Products were or could have been contaminated with Cyclosporiasis, and, thus, were not as advertised, represented, or guaranteed. Further, there are products on the market which lack contamination of Cyclosporiasis, so the contamination is entirely avoidable. Defendant did not notify Plaintiffs or Class members of the risk of contamination through the Product's labels, ingredients, packaging, or advertising – and omission which caused significant, deleterious harm to purchasers of the Products.

5. Plaintiffs are individuals who purchased the Products without notice or knowledge that the Products were worthless and/or were worth less than the price that they had paid. Indeed, Plaintiffs would not have purchased the Products had they known the truth. Accordingly, Plaintiffs bring this Action and assert claims on behalf of themselves and all other similarly situated persons (as defined below) for violations of state and common laws.

## JURISDICTION, VENUE and INTRADISTRICT ASSIGNMENT

6. *Subject Matter Jurisdiction.* This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Pursuant to CAFA, the proposed Nationwide Class comprises more than 100 members; the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and minimal diversity exists because more than two-thirds of members of the proposed Nationwide Class are citizens of States different from Taylor Farms, which maintains its principal place of business in California.

7. *Personal Jurisdiction.* This Court has personal jurisdiction over Taylor Farms because it maintains its principal place of business in this District, conducts substantial business throughout this District and State, and the conduct giving rise to Plaintiffs' claims emanated from Taylor Farms' headquarters in Salinas, California.

8. *Venue.* Venue is proper because (1) the Defendant Taylor Farms is headquartered and conducts business in this District, (2) Defendants' acts or omissions were directed toward this District, (3) a substantial part of the events, acts and omissions

giving rise to Class members' claims occurred here, and (4) because Class members were harmed here.

9.    *Intradistrict Assignment.*  Consistent with the local rules of this Court, the proper divisional assignment for this matter is San Jose due to the headquarters of the Defendant.

## PARTIES
## PLAINTIFFS

### *Plaintiff Kait Gelbspan*

10.    Plaintiff Gelbspan is, and at all relevant times was, a resident and citizen of Los Angeles, California.

11.    Plaintiff purchased Defendant's Products during the applicable period from Whole Foods and other places.

12.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much as she did for the Products.  On at least two occasions, Plaintiff purchased the Products during the applicable period, and she paid more than she would have had she known the truth about the risk of Cyclosporiasis infection by consuming the Products – which she did.  Thus, the Products were worthless because they had the risk of containing Cyclosporiasis.

13.    Further, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

### *Plaintiff Victor Granados*

14.    Plaintiff Granados is, and at all relevant times was, a resident and citizen of Seaford, New York.

15.    Plaintiff purchased Defendant's Products during the applicable period from Sweetgreen, Costco and other places.

4

16. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much as he did for the Products. On at least ten occasions, Plaintiff purchased the Products during the applicable period, and she paid more than she would have had he known the truth about the risk of Cyclosporiasis infection by consuming the Products – which he did. Thus, the Products were worthless because they had the risk of containing Cyclosporiasis.

17. Further, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

## DEFENDANT

### *Defendant Taylor Fresh Foods, Inc.*

18. Defendant Taylor Fresh Foods, Inc. maintains its principal place of business located at 150 Main Street, Suite 300, in Salinas, California.

## FACTUAL ALLEGATIONS

### *Defendant's Business*

19. Taylor Farms is among the largest producers of lettuce and leafy greens in the United States. Currently, Taylor Farms has an $8 billion agriculture and fresh-cut produce enterprise. According to Taylor Farms, the "Taylor Family has been dedicated to providing families across North America with health, wholesome, and great tasting products." Taylor Farms calls the Products, and salads in particular, "our specialty" and represents that their "products are made with earth's honest ingredients, and none of the nonsense."

20. Indeed, Taylor Farms is a dominant force in the market for lettuce, leafy greens, and pre-packaged salad – approximately one out of every three salads consumed in the United States is produced by Taylor Farms. Taylor Farms says that it is committed to "quality, assured supply, innovation, sustainability, and food safety."[3]

---

[3] https://foodiverse.com/en/foodiverse-welcomes-taylor-farms-as-a-new-partner/, (last accessed July 16, 2026).

21.     According to Taylor Farms, they have a commitment in particular to food safety, as they state on their website:

*Food safety isn't just a protocol – it's a promise we make every day.  At Taylor Farms, we believe that providing fresh, high quality produced starts long before the harvest.  It begins with a tiny sprout nurtured in rich, healthy soil and continues through careful harvesting, meticulous processing, and swift delivery to your local grocery store.*

*Taylor Farms is a force for good for people and our community.  Our mission is to ensure that every leaf, every vegetable, and every product that reaches your table is not only fresh and delicious but also safe for your and your family.*[4]

22.     Taylor Farms makes numerous representations about the safety protocols implemented to protect the Products:

   a. "We adhere to stringent industry standards and certifications to uphold our promise of safety and quality.  We partner with reputable third-party agencies and government inspectors to validate our practices and exceed regulatory requirements."

   b. Our "farms are handpicked for their ideal growing conditions, access to clean water, and fertile soil.  More importantly, we choose to work with farmers who share our unwavering commitment to food safety and quality."

---

[4] https://www.taylorfarms.com/our-commitment/, (last accessed July 16, 2026).

c. "Our efforts are both boots-on-the-ground and data driven, leading to numerous advancements in the industry:

    i. Advanced Verification – we have a robust routing pathogen testing program for our products based on USDA standards.

    ii. State-of-the-Art Equipment – our operations feature some of the most advanced equipment and cleaning practices in the world of fresh-cut produce.

    iii. Wash Systems – we've implemented the only USDA-tested and verified wash system known as "SmartWash" [] an innovative multistage washing process ensures consistent chemistry in the water for cleaner, fresher products.

    iv. Continuous Monitoring – our team uses AI and inline environmental monitoring verification to keep a constant eye on our processes. This technology helps us identify and address potential issues before they become problems."[5]

d. Taylor Farms lists the ten building blocks of safety as:

    1. Farm Selection
    2. Irrigation Water
    3. Soil Health
    4. Advanced Verification

---

[5] *Id.*

> 5. Boots on the Ground
>
> 6. Harvest
>
> 7. Post-Harvest Handling
>
> 8. Processing Facilities
>
> 9. Equipment Design
>
> 10. Cold Chain Management[6]

23. Taylor Farms is able to take all of these purported measures because it is a highly sophisticated, well-financed business that has ethical obligations, obligations under the law, and expectations consistent with industry standards to ensure that the food that they produce, including the Products, are safe and fit for human consumption.

### The Outbreak

24. Beginning June 22, the Cyclosporiasis first came to surface in the state of Michigan; within just two weeks, over 4,312 cases of Cyclosporiasis were recorded with over 100 hospitalizations. Similar outbreaks occurred in 34 states, with a sharp uptick in cases in Michigan, Ohio, West Virginia and Kentucky.

25. The symptoms of Cyclosporiasis – explosive diarrhea, loss of appetite and weight loss, stomach cramps and bloating, nausea and vomiting, fatigue and muscle aches, and low-grade fever – are severe and can last months. With an incubation period as long as two weeks, it becomes difficult for victims of Cyclosporiasis to pinpoint exactly the cause of the illness or origin of the parasite.

26. According to reporting on the 2026 Cyclosporiasis outbreak, Cyclosporiasis "spreads when people consume food or water contaminated with the parasite. Food or water can become contaminated when it comes into contact with feces containing the parasite. Outbreaks are most often linked to contaminated fresh produce. It cannot spread

---

[6] *Id.*

from person to person."[7]

27.    There are usually thousands of cases of Cyclosporiasis each year.[8]  Thus, Taylor Farms knew or should have known of the risks of Cyclosporiasis and Cyclosporiasis outbreaks and took preventative measures to avoid those risks.

28.    On July 16, 2026, the CDC targeted Taylor Farms as the potential source for contamination.[9]  Initially, the source of the outbreak was traced to Taco Bell, which uses Taylor Farms as its supplier of shredded iceberg lettuce.  According to Taco Bell: "[b]ased on ongoing conversations with public health officials, and out of an abundance of caution, Taco Bell has taken immediate action to voluntarily remove potentially. Impacted lettuce from a supplier in select states.  The affected ingredient from our supplier is being indefinitely removed from our supply chain nationwide and will be replaced within 24 hours in select states […] Taco Bell has taken precautionary action, and we encourage all relevant restaurants, retailers, and foodservice operators to do the same."[10]

29.    Unfortunately, this is not Taylor Farms' first experience with parasites – or even a Cyclosporiasis outbreak.

30.    In 2013, 631 people were sickened in 25 states by Taylor Farms' salad mixes which were contaminated with Cyclosporiasis and sold at Olive Garden and Red Lobster.[11]  Additionally, in 2024, Taylor Farms was the source for an *E. Coli* outbreak stemming from onions at McDonalds – hundreds of people became ill and at least one person died.[12]

31.    To date, Taylor Farms still has not issued any sort of recall for the Products

---

[7]    https://www.detroitnews.com/story/news/local/michigan/2026/07/16/man-sues-taco-bell-says-illness-left-him-unable-to-function/90951353007/, (last accessed July 16, 2026).

[8] *Id.*

[9]    https://www.washingtonpost.com/health/2026/07/16/lettuce-supplier-is-potential-source-cyclosporiasis-outbreak-investigators-say/, (last accessed July 16, 2026).

[10] *Id.*

[11]    https://www.nbcnews.com/health/health-news/fda-names-source-cyclosporiasis-outbreak-rcna587899, (last accessed July 16, 2026).

[12] *Id.*

whatsoever.

32.     Taylor Farms was aware of the dangers associated with Cyclosporiasis contamination prior to the manufacture of the Products and should have identified any such contamination through its own testing and analysis prior to placing the Products in the marketplace.  However, Taylor Farms did not identify this contamination, and as a result, did not inform Plaintiffs or Class members that its products were subject to a risk of l Cyclosporiasis contamination, or that consumption of such products may cause Cyclosporiasis. Taylor Farms omitted this knowledge from the packaging, labeling, marketing, and advertising of the Products, which omission induced Plaintiffs to purchase and consume the Products.  No reasonable consumer would purchase products that risk causing Cyclosporiasis due to contamination, nor would any reasonable consumer have reason to expect the products offered on the shelves of their grocer to be contaminated and dangerous for consumption.  Nothing on the Product labels or packaging, nor the Products' marketing or advertising information, alerted Plaintiffs and Class members that the Products they were purchasing included the risk of infection with Cyclosporiasis.

33.     Because Plaintiffs and Class members were deprived of such information, they were deprived of the benefit of the bargain and spent money on Products which were worthless or worth less than the price they paid.  Had they been apprised of such information, Plaintiffs would not have purchased the Products and certainly would not have consumed them.

34.     Taylor Farms had a continuous obligation to disclose the risk of Cyclosporiasis contamination to Plaintiffs and the Class members due to its superior knowledge concerning the Product composition, as well as the fact that contamination is an issue of safety, which Plaintiffs and Class members have no reasonable way of discovering on their own. Failure to disclose such imperative information amounts to fraudulent misrepresentation, deceptive, unfair, and misleading conduct, and unlawful conduct that is actionable by Plaintiffs.

35.     Defendant's Products are adulterated, worthless, unfit for sale or for human

use due to the presence of bacteria within the Products.

36. Plaintiffs seek to recover damages for the purchase of the Products.

## CLASS ACTION ALLEGATIONS

37. Plaintiffs bring this Action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of the following Classes:

**Nationwide Class**: All persons in the United States who purchased one or more Products sold by Defendant during the period of June and July 2026 and subject to any potential, subsequent recalls (the "Class Period").

**California Sub-Class**: All persons in the State of California who purchased one or more Products sold by Defendant during the period of June and July 2026 and subject to any potential, subsequent recalls.

**New York Sub-Class.**  All persons in the State of New York who purchased one or more Products sold by Defendant during the period of June and July 2026 and subject to any potential, subsequent recalls

38. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) the Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiffs' counsel and Defendant's counsel.

39. *Numerosity*.  The exact number of members of the Class is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class likely consists of hundreds of thousands or even millions of individuals, and the members can be identified through Defendant's records.

40. *Predominant Common Questions*.  The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not

limited to, the following:

    a. Whether Defendant knew or should have known the Products were potentially contaminated with Cyclosporiasis that rendered the Products unsafe and unsuitable for human consumption;

    b. Whether Defendant failed to employ quality control measures and failed to properly manufacture, test, and/or inspect the Products before distribution and sale;

    c. When Defendant learned or should have learned of Cyclosporiasis contamination in the Products;

    d. Whether Defendant made affirmative misrepresentations and/or false and misleading statements regarding the Products;

    e. Whether Defendant failed to disclose material facts regarding the Products;

    f. Whether Defendant was negligent in producing the Products;

    g. Whether Defendant made negligent misrepresentations in connection with the distribution and sale of the Products;

    h. Whether Defendant breached express warranties in connection with the distribution and sale of the Products;

    i. Whether Defendant breached the implied warranty of merchantability in connection with the distribution and sale of the Products;

    j. Whether Defendant violated the state consumer protection statutes alleged herein;

    k. Whether Defendant was unjustly enriched;

    l. The nature of the relief, including damages and equitable relief, to which Plaintiffs and the members of the Class and Sub-Classes are entitled; and

    m. Whether Defendant is liable for attorneys' fees and costs.

41. *Typicality*. Plaintiff's claims are typical of the claims of the other members of the claims of Plaintiff and the members of the Class arise from the same conduct by Defendant and are based on the same legal theories.

42. *Adequate Representation*. Plaintiffs have and will continue to fairly and

adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions, including food recall class actions. Plaintiffs have no interest antagonistic to the interests of the Class, and Defendants have no defenses unique to any Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the interests of the other members of the Class.

43. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

44. Plaintiffs may revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## COUNT I

### Negligence

45. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

46. Defendant owed a duty of care to Plaintiffs and the Class and Sub-Class members. Defendant breached that duty.

47. Defendant is the manufacturer of the Products purchased by Plaintiffs and Class and Sub-Class members.

48. Defendant had a duty to take reasonable care in the manufacture, formulation, sourcing, testing, inspection, marketing, distribution, and the sale of the Products,

including identifying all affected Products and/or to promptly recall and remove all of the affected Products from the marketplace, including taking all appropriate remedial action.

49. By the actions and omissions alleged herein, Defendant breached its duty. Among other things, Defendant manufactured products contaminated and potentially contaminated with dangerous levels of Cyclosporiasis that rendered its Products unsafe and unsuitable for human consumption.

50. As a result of Defendant's breaches and violations, Plaintiffs and Class and Sub-Class members suffered harm.

51. Defendant's negligence was a substantial factor in the harm caused to Plaintiffs and Class and Sub-Class members.

52. At all relevant times, Plaintiffs and members of the Class and Sub-Classes acted lawfully and with due care and did not contribute to their own injuries.

53. Accordingly, Plaintiffs and members of the Class and Sub-Classes are entitled to damages and other appropriate relief, as prayed for hereunder.

## COUNT II

### Negligent Misrepresentation

54. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

55. Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

56. Defendant misrepresented material facts concerning the safety, suitability, and quality of its Products, including that the Products were nutritious, healthful, and suitable for human consumption.

57. Defendant has no reasonable grounds for believing its misrepresentations were true. Among other things, Defendant represented that the Products were of high quality, healthy, safe, and suitable for human consumption. Defendant knew or should have known but failed to disclose that, contrary to its representations, the Products were

contaminated or potentially contaminated with Cyclosporiasis and were not fit for human consumption.

58.    Defendant made such misrepresentations with the intent to induce Plaintiffs and Class and Sub-Class members to rely on its misrepresentations and purchase Products which were recalled.

59.    Plaintiffs and Class and Sub-Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's misrepresentations, Plaintiffs and Class and Sub-Class members purchased and consumed the Products containing or potentially containing Cyclosporiasis or provided them to family members for consumption.

60.    As a direct and proximate consequence, Plaintiffs and Class and Sub-Class members suffered harm. Among other things, they would not have purchased Defendant's Products, or they would have paid less had they known of the presence, or the potential presence, of Cyclosporiasis.

61.    Plaintiffs and Class and Sub-Class members are therefore entitled to damages and relief, as prayed for hereunder.

## COUNT III

### Breach of the Implied Warranty of Merchantability

62.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

63.    At all relevant times, Defendant was the merchant, manufacturer, marketer, warrantor, and/or seller of the Products. Defendant knew or had reason to know of the specific use for which the Products were purchased.

64.    Plaintiffs purchased the Products manufactured and marketed by Defendant at retailers and online retailers for retail sale to consumers throughout the United States.

65.    The Products are and were at all relevant times goods within the meaning of various state statutes set forth herein.

66. An implied warranty that the Products were merchantable arose by operation of law as part of the sale of the Products.

67. Defendant impliedly warranted to Plaintiffs and the Class and Sub-Classes that the Products were of merchantable quality, fit for their ordinary use, and conformed to the messaging, characterizations, promises, and affirmations of fact made on the Products' packaging, labels and/or advertisements, including that the food was high quality, healthy, safe, and suitable for human consumption. The Products when sold at all times were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and nutritious food. The Products were and are not safe for consumption because they were recalled due to Cyclosporiasis contamination or potential contamination.

68. Plaintiffs and members of the Class and Sub-Classes relied on such messaging, characterizations, promises, and affirmations of fact when they purchased the Products. Contrary to Defendant's representations and warranties, the Products were not fit for their ordinary use – human consumption- and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, dangerous levels of Cyclosporiasis contamination that do not conform to the packaging.

69. As a consequence, Defendant breached its implied warranties upon selling such Products, as each product was recalled due to possible contamination with Cyclosporiasis.

70. Defendant cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Products.

71. Defendant was on notice of this breach, as Defendant was aware or should have been aware of the Cyclosporiasis contamination in the Products due to its own testing and expertise, and/or based on testing conducted by various third parties as alleged herein that revealed the Products as contaminated with Cyclosporiasis.

72. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Class and Sub-Classes have been damaged in an amount to be proven at trial.

73. Plaintiffs and members of the Class and Sub-Classes have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

74. Privity exists because Defendant impliedly warranted to Plaintiff and members of the Class and Sub-Classes through the warranting, packaging, advertising, marketing, and labeling that the Products were high quality, healthy, safe, and suitable for human consumption, and by failing to make any mention of Cyclosporiasis contamination or potential contamination.

75. Nonetheless, privity is not required here because Plaintiffs and each Class and Sub-Class member are intended third-party beneficiaries of contracts between Defendant and its distributors and buyers, and of their implied warranties. The distributors and buyers were not intended to be the ultimate consumers of the Products and have no rights under the warranties of the Products; the warranties were designed for and intended to benefit consumers only.

76. As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Class and Sub-Classes have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known of the potential or actual Cyclosporiasis contamination.

77. Plaintiffs and members of the Class and Sub-Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## COUNT IV

### Violations of California's Unfair Competition Law

78.   Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

79.   Plaintiffs bring this claim on behalf of the California State Sub-Class (the "Class" for purposes of this Count).

80.   Defendant's business practices as complained of herein violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL").

81.   Defendant's practices constitute "unlawful" business practices in violation of the UCL because, among other things, they violate the Food, Drug, and Cosmetic Act, consumer protection acts, and warranty laws.

82.   Defendant's actions and practices constitute "unfair" business practices in violation of the UCL, because, among other things, they are immoral, unethical, oppressive, unconscionable, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused by consumers.

83.   As a result of Defendant's wrongful business practices, Plaintiffs and the Class lost money and have suffered injury-in-fact.

84.   Defendant's wrongful business practices present an ongoing and continuing threat and should be enjoined.

85.   Plaintiffs and the Class seek an order enjoining Defendant's unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available. The claims for equitable relief are brought in the alternative should Plaintiffs not have an adequate remedy at law.

86.   Accordingly, Plaintiffs and members of the Class are entitled to judgment and equitable relief.

## COUNT V

### Violations of New York's General Business Law § 349

87. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

88. Plaintiff brings this claim on behalf of the New York State Class (the "Class" for purposes of this Count).

89. NY GBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service […]."

90. Here, Defendant purposefully and knowingly took actions directed to consumers, including to Plaintiff Granados and Class, in the form of branding, marketing, advertising and other messaging, claiming that Defendant's products were fit for their ordinary purpose – to be consumed.

91. Defendant's acts were and are materially misleading because Defendant in fact sold the Products which were tainted with dangerous bacteria into commerce Plaintiff Granados and the Class have been injured because of Defendant's deceptive or unfair acts, because they purchased Defendant's Products at a premium price on the basis of the fact that the Products were fit for consumption when they were not. As such, Plaintiff Granados and the New York State Subclass seek actual damages and at least the minimum statutory damages of $50 per violation.

## COUNT VI

### Unjust Enrichment

92. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

93. Plaintiffs and members of the Class and Sub-Classes conferred a benefit upon Defendant. Plaintiffs and members of the Class and Sub-Classes paid money for the Products which were not as represented; they were not suitable for human consumption, they did not provide targeted nutrition for humans as represented, and/or they did not meet

Defendant's guarantees promising taste and nutrition. Defendant has unjustly retained the benefits conferred upon it by Plaintiffs and Class and Sub-Class members.

94. The circumstances as alleged herein make it inequitable for Defendant to retain such benefit. Specifically, Defendant retained that benefit even though the Products contain or may contain Cyclosporiasis, which renders the Products unsafe and unsuitable for human consumption. If Plaintiffs and Class and Sub-Class members had known the true nature of the Products, they would not have paid money for them or would have paid less.

95. Plaintiffs and Nationwide Class and Sub-Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class respectfully requests that the Court enter an order:

A. Certifying the Class and appointing Plaintiffs as the Classes' representatives;

B. Declaring that Defendant's conduct was unlawful, unfair, deceptive, and tortious as alleged herein;

C. Awarding declaratory relief against Defendant;

D. Awarding such injunctive and other equitable relief as the Court deems just and proper;

E. Awarding Plaintiffs restitution and disgorgement of all amounts by which Defendant was unjustly enriched at the expense of Plaintiffs and the Class, and impose a constructive trust over such amounts;

F. Awarding Plaintiffs and the Class members statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

G. Awarding Plaintiffs and the Class members pre-judgment and post-judgment interest;

H. Awarding Plaintiffs and the Class members reasonable attorneys' fees, costs, and

expenses; and

I.  Granting such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

96.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

Respectfully Submitted,

DATED: June 16, 2026

/s/ Lina Kaisey
Lina Kaisey (SBN 314322)
*lina@kaiseylaw.com*
  **KAISEY LAW P.C.**
100 Wilshire Boulevard, Suite 700
Santa Monica, California 90403
Tel.: (858) 774-0819

Blake Hunter Yagman (N.Y. Bar No. 5644166)*
*blake.yagman@yagmanpllc.com*
  **YAGMAN PLLC**
626 RexCorp Plaza
Uniondale, New York 11556
Tel.: (929) 709-1493

Charles D. Moore*
*cmoore@reesellp.com*
  **REESE LLP**
121 N. Washington Ave., Fourth Floor
Minneapolis, Minnesota 55401
Tel.: (212) 643-0500

Kevin Laukaitis*
*klaukaitis@laukaitislaw.com*
  **LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon, Suite 205, #10518
San Juan, Puerto Rico 00907
Tel.: (215) 789-4462

*\*PHV Forthcoming*

*Attorneys for Plaintiffs GELBSPAN, GRANADOS and the Proposed Classes*