**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: 2026 CYCLOSPORIASIS OUTBREAK LITIGATION | **MDL No. 3196** |

**Response of Plaintiffs Ayyad, Caruso, Hercula, O'Hara, and Bogard in Opposition to Centralization**

Pursuant to the Panel's Order of August 17, 2026 (Dkt. 22), Plaintiffs in five of the personal-injury actions associated with this docket [1] (collectively, “Responding Plaintiffs”) respond to the Withdrawal of Motion for Centralization and Transfer filed by Plaintiffs Granados and Gelbspan (Dkt. 19) and state that they do not support centralization of their actions under 28 U.S.C. § 1407.

## I. INTRODUCTION

The only party that ever asked for centralization and transfer of these matters has abandoned the request, without qualification or explanation. (Dkt. 19). No proponent remains, and none could carry the strong burden that applies where, as here, only a handful of actions are candidates for centralization. Meanwhile the docket has taken shape: of the thirteen actions before the Panel, nine plead individual personal injury from cyclosporiasis; two, *Gelbspan* and *Null*, are nationwide consumer class actions for economic loss that plead no illness; and two, *Koss* and *Giles*, are nationwide class actions pleading personal injury.

Responding Plaintiffs' cases are individual personal injury matters under the law of three different states, two of them against local franchisees no consumer class has

[1] *Ayyad v. Taylor Fresh Foods Inc. et al.*, No. 1:26-cv-01648 (N.D. Ohio); *Caruso v. Taco Bell of America, LLC*, No. 1:26-cv-01661 (N.D. Ohio); *Hercula v. Taco Bell of America, LLC*, No. 2:26-cv-12524 (E.D. Mich.); *O'Hara v. Border Foods, LLC*, No. 1:26-cv-02183 (W.D. Mich.); and *Bogard v. ABTB Louisville LLC*, No. 3:26-cv-00607 (W.D. Ky.).

named as a defendant, and each will turn on individualized proof of exposure, causation, and damages. Centralizing Responding Plaintiffs' actions along with four class actions would not produce efficiency or convenience; it would risk delay, as ripe individual personal-injury claims may wait behind Rule 23 briefing in which they have little stake, while the plaintiff-specific discovery that decides each case — medical records, treating providers, individual damages — would proceed one plaintiff at a time in any forum and would gain little from centralization.

Section 1407 requires a proponent carrying a strong burden, common questions of fact that predominate, and efficiencies unattainable through informal coordination. The docket before the Panel offers none of the three, and the Panel should decline to centralize the matters before it.

## II. ARGUMENT

### A. Centralization would serve neither convenience nor efficiency.

A party seeking to transfer cases bears the burden of establishing that transfer is proper under 28 U.S.C. § 1407. *See In re Multidistrict Civil Antitrust Actions Involving The Distribution of Scotch Whiskey*, 299 F. Supp. 543, 544 (J.P.M.L. 1969). Where, as here, only a few cases are to be consolidated, "the moving party bears a strong burden to show that the common questions of fact are so complex and the accompanying common discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses." *Id.* Although no centralization motion remains pending, no party could meet that heightened burden.

Nor can any party show that discovery would be so complex and time-consuming as to warrant centralizing the thirteen actions now before the Panel. Instead, the actions

are too dissimilar to benefit from consolidation. The class actions turn on Rule 23; the personal-injury cases turn on plaintiff-specific proof, against different defendants and under different states' laws. Individualized causation will predominate over the narrow band of common facts, and what little discovery is truly common, informal coordination can deliver.

### B. The putative class actions and the individual actions differ in claims, proof, law, and defendants.

The thirteen cases before the Panel vary widely in the relief they seek, their makeup, and the discovery they will need. *Gelbspan* pleads purchaser classes—a nationwide class and two sub-classes—against a single defendant and alleges no illness; *Null* expressly disclaims bodily injury. Complaint at ¶ 2, *Null et al. v. Taylor Fresh Foods, Inc. et al.*, No. 5:26-cv-07629 (N.D. Cal. July 23, 2026), Dkt. 1 ("This is an economic-loss case, not a personal-injury case. Plaintiffs do not seek recovery for bodily injury."). Two more, *Koss* and *Giles*, plead personal-injury classes against multiple defendants with varying dates and ranges of illness.

For all four, the center of gravity is Federal Rule of Civil Procedure 23 and its questions of class definition, predominance, whether purchasers overpaid, how and when purchasers were injured, and a classwide damages model. Only some of those issues arise in Responding Plaintiffs' cases, which require proof, plaintiff by plaintiff, of consumption at an identified restaurant on an identified date, a clinical course consistent with cyclosporiasis, a differential diagnosis excluding other causes, and each plaintiff's own medical records, providers, and damages.

The Panel has declined to centralize dockets that mix personal-injury and economic-loss actions where, as here, some plaintiffs disclaim personal-injury damages

and the medical evidence behind them outright, while others rely on little else. *See In re OxyElite Pro & Jack3d Prods. Liab. Litig.*, 11 F. Supp. 3d 1340, 1341 (J.P.M.L. 2014) (declining to centralize nine actions where "plaintiffs in two of the three false advertising actions represent that they will not delve into the medical issues raised by the personal injury actions").

The defendants differ too, as *Gelbspan* and *Null* name only the supplier as a defendant, while Responding Plaintiffs name some combination of the franchisee operator of the restaurant where the plaintiff was served, the franchisor, and the supplier. A single-market franchisee has no stake in a nationwide purchaser class, and the discovery it faces is location-specific. Ultimately, the class actions and Responding Plaintiffs' cases present different claims, different proof, different law, and different defendants — not the predominating common questions of fact that Section 1407 requires.

**C. Individualized causation predominates and counsels against consolidation.**

The Panel has repeatedly declined to centralize dockets in which individualized issues of causation predominate over the common questions of fact — including dockets closely resembling this one. Take, for example, *In re Belviq (Lorcaserin HCl) Products Liability Litigation*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021), where the Panel faced thirteen actions, twelve "individual personal injury actions" and "one putative class action" pleading consumer-protection and warranty claims. The Panel denied centralization. *Id.* at 1371. Although the actions shared common questions about the product, movants "failed to meet their burden of establishing that centralization would be the most efficient path," because "individualized factual issues concerning causation will

predominate and diminish the potential to achieve significant efficiencies in an MDL." *Id.* at 1370. The same is true here in that exposure, latency, laboratory confirmation, and severity differ for every plaintiff, while the common liability facts are largely documents investigators have already assembled.

Even more pertinent to this case is *In re Northeast Contaminated Beef Products Liability Litigation*, 856 F. Supp. 2d 1354 (J.P.M.L. 2012), where the Panel confronted issues of causation and damages in the context of foodborne illness. Each action arose from *E. coli* contamination of ground beef produced by a manufacturer, and the Panel still denied centralization. *Id.* at 1355. Although the actions "share[d] some background factual issues concerning the … outbreak," the movants "failed to convince us that those issues contain significant overlapping questions of fact sufficient to warrant centralization," because "[i]ndividualized issues of causation concerning each plaintiff's injuries appear to predominate among the actions." *Id.* at 1354–55.

The Panel has applied the same reasoning—individualized causation defeats centralization—to dockets far larger than this one. The Panel denied centralization of ninety-two actions in *In re Rely Tampon Products Liability Litigation*, 533 F. Supp. 1346, 1347 (J.P.M.L. 1982), because although "the actions in this litigation involve some common questions of fact," it was "not persuaded that these common questions of fact will predominate over individual questions of fact present in each action."

Nor does the prospect of additional filings change the calculus. Any later-filed case would present the same plaintiff-specific questions of exposure, latency, and severity that predominate in the actions already before the Panel. Indeed, the Panel has "often" stated that it is "disinclined to take into account the mere possibility of future

filings in our centralization calculus." *Belviq*, 555 F. Supp. 3d at 1370 (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013)).

**D. Informal coordination is practicable, and centralization is the last resort.**

Alignment of counsel is what the Panel found sufficient in *Belviq*, and the Panel should find the same here. The undersigned appears in five of the thirteen actions, and two other firms appear in two additional actions. Taylor Farms, the defendant common to every action, is represented by one firm throughout, and six actions are pending in the Eastern District of Michigan, three already before Judge Leitman. *See In re Cooper Co., Inc.*, 753 F. Supp. 3d 1380, 1381 (J.P.M.L. 2024) (declining to centralize twenty-nine actions when actions were pending in three districts before four judges and most plaintiffs were represented by two law firms).

Every action is in its infancy. Cross-notice of corporate depositions, a shared document depository, a stipulation that generic discovery is usable in all actions, and coordinated Rule 45 practice will capture nearly every efficiency an MDL would offer. *See In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 243–44 (J.P.M.L. 1978). Where plaintiffs and defendants alike are represented by common counsel across the involved actions, "informal cooperation among the involved attorneys and courts is both practicable and preferable." *Contaminated Beef*, 856 F. Supp. 2d at 1355. Centralization "should be the last solution after considered review of all other options." *In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F. Supp. 3d 1348, 1349 (J.P.M.L. 2020) (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)). Both principles decide this matter:

the alignment of counsel across the involved actions makes informal cooperation not merely practicable but preferable, and with every coordination alternative available and none yet tried, the Panel has no occasion to reach for the last solution.

### E. Any centralization should be limited to the economic-loss class actions and situated in the Eastern District of Michigan, not the Northern District of California.

If the Panel centralizes at all, it should limit any MDL to the economic-loss class actions, *Gelbspan* and *Null*, and exclude the individual personal-injury actions. Either way, in no event should this litigation be centralized in the Northern District of California, a forum that no longer has a proponent.

Only three of the thirteen actions are pending there, and while Taylor Farms' Salinas headquarters is a California connection, it does not outweigh the location of the illnesses, witnesses, and records. The withdrawn submission supporting that forum called these cases "these antitrust actions," Dkt. 6 at 2, described "the Northern District of California, located in Monterey, California," *id.* at 3, asked that the litigation be centralized "in the Northern District of California in Monterey, California," *id.* at 4, and rested its convenience showing on "dozens of hotels in Monterey alone," *id.,* despite the district having no courthouse in Monterey.

Should the Panel centralize any personal-injury action over Responding Plaintiffs' objection, the Eastern District of Michigan is the sensible forum: six of the thirteen actions are already there, three before a single judge, and Michigan is where the outbreak was first identified and the traceback data generated.

## III. CONCLUSION

Responding Plaintiffs respectfully request that the Panel decline to centralize these actions; in the alternative, that any MDL be limited to the economic-loss class actions and exclude the personal-injury actions; and that no MDL, in any event, be centralized in the Northern District of California.

DATED: August 20, 2026.

Respectfully submitted,

**MARLER CLARK, INC., PS**

By: /s/ William D. Marler

William D. Marler, WSBA #17233
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
Telephone: (206) 346-1888
Facsimile (206)346-1898
Email: bmarler@marlerclark.com
*Counsel for Responding Plaintiffs*
Mohammed R. Ayyad, Patrick L. Bogard, Valerie Caruso, Karl Hercula, Gina Hercula, and Kellye A. O'Hara